UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT CORDOVA III,<br><br>Defendant. | No. 1:18-cr-00145-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 65) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), brought on behalf of defendant Robert Cordova III by his appointed counsel. (Doc. No. 65.) That motion is based in part on the purported risks posed to defendant Cordova by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On October 8, 2019, less than a year ago, defendant was sentenced to a term of 15 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a 36-month term of supervised release, following his plea of guilty to committing conspiracy to possess with intent to distribute methamphetamine and cocaine in violation of 18 U.S.C. §§ 846, 841(a)(1) as charged in a one county Superseding Information. (Doc. Nos. 49, 59 & 60.) At the time he filed the pending

motion on July 2, 2020, defendant was housed at the Federal Correctional Institution, Lompoc ("FCI Lompoc") (Doc. No. 65 at 2), but the government notes that the BOP, on or about July 15, 2020, transferred him to GEO-Taylor St. Facility, a residential reentry center in San Francisco, California (Doc. No. 69 at 1, 4; *see also* Doc. No. 69-1 at 2).

On July 27, 2020, the government filed its opposition to the pending motion. (Doc. No. 69.) Despite being provided the opportunity to file a reply to that opposition by August 3, 2020 (*see* Doc. No. 68), defendant Cordova did not do so.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary

/////

/////

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

> district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

## I.   Administrative Exhaustion

Defendant Cordova's counsel is "informed that Mr. Cordova made a request to [BOP] . . . for compassionate release, however counsel does not have specific information related to the dates of such requests." (Doc. No. 65 at 5.)  The government "does not dispute that Cordova exhausted his administrative remedies in this case." (Doc. No. 69 at 3.)  Accordingly, the court will turn to the merits of defendant's motion.

## II.   Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt.

5

n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).

1        Here, defendant Cordova argues that he is "especially susceptible to COVID19" because
2   he suffers from high blood pressure and because FCI Lompoc has had "a significant coronavirus
3   outbreak within its population." (Doc. No. 65 at 1–2.)  Defendant Cordova also contends that he
4   in fact tested positive for COVID-19 in May 2020 while imprisoned at FCI Lompoc.  (*Id.* at 2.)  It
5   appears that defendant Cordova recovered from that first bout with the virus because he notes that
6   his condition "was not life threatening," but does represent that at the time his motion was filed
7   that he "now tested positive again, for a second time." (*Id.*)

8        The government counters that defendant Cordova is no longer incarcerated at FCI
9   Lompoc, and instead is housed at a residential reentry center that has been able to effectively
10  manage the COVID-19 outbreak at its facility.  (Doc. No. 69 at 1.)  The government, citing to
11  defendant's BOP medical records filed with the court under seal (Doc. No. 73), notes that
12  "Cordova was asymptomatic when he contracted COVID-19 and appears to have received
13  adequate treatment at FCI Lompoc." (Doc. No. 69 at 2.)  The government argues that defendant's
14  sentence cannot be reduced "due to generalized concerns about the COVID-19 pandemic." (*Id.* at
15  6.)

16       The court notes that defendant Presentence Investigation Report in this case indicated that
17  the defendant suffers from high blood pressure.  (Doc. No. 57 at 16.)  Thus, under CDC
18  guidelines, defendant Cordova might be at an increased risk for suffering severe illness from
19  COVID-19.  *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control
20  and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-at-
21  higher-risk.html (last reviewed August 11, 2020) (noting that individuals with hypertension on
22  high blood pressure "might be at an increased risk for severe illness from COID-19").
23  Nevertheless, in this case, the court does not find extraordinary and compelling reasons justifying
24  compassionate release pursuant to § 3582(c)(1)(A).

25       The court certainly recognizes that FCI Lompoc initially failed to control the outbreak of
26  COVID-19 at that institution, as the majority of its inmates tested positive for the virus.  *See*
27  *United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).
28  (*See also* Doc. No. 60 at 2.)  That situation is obviously an extremely serious one.  However, it

appears that the prison staff there was able to adequately monitor and care for defendant Cordova, who appears to have received treatment for an asymptomatic COVID-19 infection and recovered. (Doc. No. 73.)  The court notes that plaintiff's re-infection with COVID-19, while certainly concerning, also appears to be asymptomatic.  (*Id.*)  Most importantly, however, defendant Cordova is no longer incarcerated at FCI Lompoc.  As noted, he has been transferred to GEO-Taylor St. Facility, a residential reentry center in San Francisco.  As of August 20, 2020, that facility reported only five inmates with positive tests for COVID-19 and three recovered inmate cases.  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited August 11, 2020).  Moreover, defendant Cordova does not contend that the staff at that residential reentry center is unable to monitor and care for him.  *See United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . ..  Counsel informed the Court that Defendant had a mild case of the virus and has recovered.  There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."); *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

Accordingly, the court concludes that defendant Cordova has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A) and therefore his motion will be denied.

**III.   Consistency With the § 3553(a) Factors**

Finally, even if defendant Cordova's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the

/////

/////

sentencing factors set forth at 18 U.S.C. § 3553(a).[4]  *See Parker*, 2020 WL 2572525, at *11.

In the pending motion, defendant argues that consideration of the § 3553 factors supports his request for compassionate release because "he is not a danger to the community" and "was not convicted of a violent or dangerous crime."  (Doc. No. 65 at 5.)  Moreover, he argues that he "has clearly accepted responsibility for his crime."  (*Id.*)  The government counters that "[t]o the extent the 3553(a) factors favor Cordova, this Court already varied substantially downward—from a Guidelines range of 30–37 months to 15 months—and so took them into account at sentencing."  (Doc. No. 69 at 3.)  Moreover, the government argues that defendant's "sentence has nearly run" and he "has already been released from prison and is serving the remaining two months of his sentence at a Residential Reentry Center."  (*Id.* at 4.)

As noted above, defendant is currently serving a 15-month sentence for conspiracy to possess with intent to distribute methamphetamine and cocaine in violation of 18 U.S.C. §§ 846, 841(a)(1) after being sentenced in October 2019.  (Doc. No. 60.)  With his acceptance of responsibility acknowledged, the presentence report in his case determined that his total offense level was 17, that his criminal history category was III, and his advisory sentencing guideline range therefore called for a term of imprisonment of between 30 and 37 months.  (Doc. No. 61 at 9–12, 18.)  After considering the § 3553(a) factors, the undersigned sentenced defendant to 15-month term of imprisonment.  (Doc. No. 60.)

As noted, defendant Cordova's criminal history score of 5 placed him in category III of the Sentencing Guidelines.  (Doc. No. 61 at 11–12.)  This criminal history, coupled with the facts

---

[4] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

that (1) the court already sentenced defendant to a term of imprisonment that was significantly less than the low end of the advisory sentencing guidelines range and (2) he is currently housed at a residential reentry center that is presumably monitoring and assisting in his reentry into society in less than two months,[5] the court does not find that granting compassionate release would be consistent with the § 3553(a) factors.

In addition, the court is not persuaded that defendant has established his post–offense rehabilitation since his sentencing just under a year ago.  In fact, defendant presents no argument or evidence to support his claimed rehabilitation.  *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases).[6]

**CONCLUSION**

Because defendant Cordova has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his early release from the residential reentry center at this time would be consistent with consideration of the sentencing

/////

---

[5] The government notes that defendant Cordova's apparent scheduled release date is September 27, 2020.  (Doc. No. 69 at 3.)

[6] In the pending motion, defendant also appears to ask the court to release him on home confinement.  (*See* Doc. No. 65 at 2, 7.)  However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement").  The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5 n.6 & *7 (N.D. Cal. May 8, 2020).

1  factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 65) is
2  denied.

3  IT IS SO ORDERED.

4  Dated:   **August 20, 2020**                              /s/ Dale A. Drozd
5                                                                         UNITED STATES DISTRICT JUDGE